# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IGNACIO HERNANDEZ-MENDEZ (01),

    Defendant.

Case No. 18-20055-01-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Ignacio Hernandez-Mendez's Motion to Dismiss his Indictment (Doc. 18). For reasons explained below, the court denies Mr. Hernandez-Mendez's motion.

### I. Background

The government has charged Mr. Hernandez-Mendez, a Mexican citizen, with one count of illegal reentry under 8 U.S.C. § 1326. Doc. 1. He has entered the country illegally four times, and he describes each entry in his motion. Specifically, his arguments focus on two of those illegal entries.

*First*, Mr. Hernandez-Mendez illegally entered the country for the second time on November 15, 2017. Law enforcement officers arrested him in Kansas City, Kansas, and detained him. Doc. 18 at 2–3. That day, he received a Form I-862 (*see* Doc. 18-1)—a Notice to Appear—that ordered him to appear before a United States Department of Justice immigration judge on a date and at a time "[t]o be set." Doc. 18-1 at 1.[1] Mr. Hernandez-Mendez also

---

[1] The parties do not appear to dispute the authenticity of the Notice to Appear (Doc. 18-1) that defendant has attached to his Motion to Dismiss (Doc. 18).

received a Spanish version of a Notice of Rights and Request for Disposition form, on which he indicated his request for a hearing before an immigration judge. Doc. 18 at 3. The Notice to Appear that Mr. Hernandez-Mendez conceded he received (*see id.*) also contained a Certificate of Service noting that the law enforcement officer who had served the Notice to Appear orally informed Mr. Hernandez-Mendez of "the time and place of his . . . hearing and of the consequences of failure to appear." Doc. 18-1 at 2; *see also* Doc. 18 at 3–4 n.3; Doc. 21 at 3. Mr. Hernandez-Mendez apparently signed both the Notice to Appear and the Certificate of Service. Doc. 18-1 at 2.

The government asserts that Mr. Hernandez-Mendez retained multiple attorneys to represent him and, through counsel and while detained, asked for a continuance. He was sent a "Notice of Hearing in Removal Proceedings" at the Versailles, Missouri, county jail where he was detained. Doc. 21 at 3–4; Doc. 23-1. The immigration court set his new hearing for January 9, 2018. At this hearing, Mr. Hernandez-Mendez conceded that he had "re-entered [the country] without permission." Doc. 18 at 3. Because Mr. Hernandez-Mendez already had departed the country once voluntarily, the presiding immigration judge informed him of his two options: (1) a removal order; or (2) additional time to find and consult counsel. Mr. Hernandez-Mendez chose the removal order. He was deported on January 19, 2018.

*Second*, Mr. Hernandez-Mendez illegally entered the country for the third time on February 6, 2018, when Border Patrol agents arrested him near Santa Teresa, New Mexico. This time, the Department of Homeland Security served him with a Notice of Intent/Decision to Reinstate Prior Order, or a Form I-871.[2] Essentially, this Notice asserted that the government

---

[2] Mr. Hernandez-Mendez's motion notes that a Form I-871 "is used when a non-citizen is subject to reinstatement of removal, *i.e.*, when 'the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal.'" Doc. 18 at 5 (quoting 8 U.S.C. § 1231(a)(5)).

could reinstate the January 9, 2018, immigration court order to remove Mr. Hernandez-Mendez again. But, this time, the government didn't deport Mr. Hernandez-Mendez immediately. Instead, the United States Attorney's Office for the District of New Mexico prosecuted him. Mr. Hernandez-Mendez pleaded guilty to illegal reentry. The court sentenced him, and, on March 6, 2018, he was deported again.

Finally, Mr. Hernandez-Mendez entered the country illegally for the fourth time. On June 27, 2018, Immigration and Customs Enforcement ("ICE") officers arrested him in Kansas City, Kansas. Mr. Hernandez-Mendez told officers that he had entered the country illegally in April 2018. The Indictment in this case arises from this June 27 arrest.

The court held a hearing on Mr. Hernandez-Mendez's motion on April 25, 2019. *See* Doc. 22. In the sections below, the court discusses the statutory and case authorities governing the motion and addresses Mr. Hernandez-Mendez's arguments.

## II.  Legal Standard

Several statutes and regulations govern the issues underlying Mr. Hernandez-Mendez's motion. First, 8 U.S.C. § 1229 controls the "[i]nitiation of removal proceedings." That section specifically requires that "written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying" several items. *Id.* at § 1229(a)(2). One of the items the Notice must include is "[t]he time and place at which the proceedings will be held." *Id.* at § 1229(a)(1)(G)(i). Second, 8 C.F.R. § 1003.14 explains the immigration court's jurisdiction. "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration court . . . ." *Id.* at

3

§ 1003.14(a). And, 8 C.F.R. § 1003.18 specifies that the notice to appear "shall provide . . . the time, place and date of the initial removal hearing, where practicable."

A separate statute governs any attacks on "the validity of [a] deportation order." 8 U.S.C. § 1326(d)(1)–(3). This statute prohibits collateral attacks unless the alien can satisfy three requirements:

> (1) [T]he alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d)(1)–(3).

Mr. Hernandez-Mendez's motion relies in large part on a 2018 Supreme Court case, *Pereira v. Sessions*, __ U.S. __, 138 S. Ct. 2105 (2018), which interpreted statutory provisions governing removal. In that case, the Court considered a notice to appear that didn't contain a date and time for defendant Wescley Fonseca Pereira's initial removal hearing. "More than a year" after the government had sent the defendant the notice to appear, "the Immigration Court mailed Pereira a more specific notice setting the date and time for his initial hearing, but the notice was sent to the wrong address and was returned as undeliverable. As a result, Pereira failed to appear, and the Immigration Court ordered him removed in absentia." *Pereira*, 138 S. Ct. at 2107. Pereira remained unaware of the proceedings and the removal order, and he stayed in the United States.

*Pereira* evaluated 8 U.S.C. § 1229b, which provides that the Attorney General "may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien . . . has been physically present in the United States for a continuous period of not less than

10 years immediately preceding the date of such application[.]" *Id.* at § 1229b(b)(1)(A). But, the same section ends this 10-year period "when [an] alien is served a notice to appear under section 1229(a)." *Id.* at § 1229b(d)(1). The Court referred to § 1229b(d)(1) as the "stop-time rule." *Pereira*, 138 S. Ct. at 2108. Because § 1229b specifically references § 1229(a), the Court concluded that Congress had answered the "narrow[]" question whether "a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger[s] the stop-time rule[.]" *Id.* at 2113. Since Congress had supplied a clear answer to this question, the Court concluded that it didn't need to "resort to *Chevron* deference" to agency interpretations and decisions. *Id.* The Court also employed several canons of statutory construction and evaluated practical considerations, but ultimately held that §§ 1229b(d)(1) and 1229(a) contained clear, unambiguous language. This language, the court held, meant that such a notice isn't sufficient to invoke the stop-time rule.

### III. Analysis

Mr. Hernandez-Mendez's motion here asserts two main arguments: one challenges the January 9, 2018, removal order, and the other challenges the March 6, 2018, removal based on the January 9 order. The court addresses these arguments, in turn, in the two sections, below.

#### A. Deficient Notice to Appear

##### 1. Does *Pereira* require a notice to appear to contain the time and place of the removal hearing to establish the immigration court's subject matter jurisdiction?

Mr. Hernandez-Mendez primarily asserts that notices to appear must contain time and place information for removal hearings under *Pereira*. Without that crucial information, Mr. Hernandez-Mendez argues, a notice to appear is void, and it divests the immigration court of subject matter jurisdiction over those removal proceedings. Mr. Hernandez-Mendez recognizes

5

that our court has rejected this argument several times. But, he asserts, the Supreme Court in *Pereira* categorized 8 U.S.C. § 1229(a)—which includes the "time and place" requirement—as "definitional." Doc. 18 at 14 (quoting *Pereira*, 138 S. Ct. at 2116). He also argues that, under established statutory construction rules, "'identical words . . . used in different parts of the same act . . . are intended to have the same meaning.'" *Id.* (quoting *Pereira*, 138 S. Ct. at 2115). Mr. Hernandez-Mendez rejects BIA decisions and regulations such as 8 C.F.R. §§ 1003.14, 1003.15, and 1003.18, which don't require notices to appear to contain time, date, or place information. These decisions and regulations, he contends, directly contravene Congress's explicit requirement in 8 U.S.C. § 1229(a) that notices to appear must indeed contain the "time and place" of removal hearings.

But, recent cases from our court show that Mr. Hernandez-Mendez is not the first to invoke *Pereira* for these arguments. *See generally United States v. Cardenas-Rodriguez*, No. 18-10104-EFM-1, 2019 WL 1058197 (D. Kan. Mar. 6, 2019); *United States v. Fernandez-Casas*, No. 18-10126-EFM-1, 2019 WL 1058198 (D. Kan. Mar. 6, 2019); *United States v. Garcia-Valadez*, No. 18-10144-EFM-1, 2019 WL 1058200 (D. Kan. Mar. 6, 2019); *United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018); *United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018); *United States v. Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018). In all these cases, our court has interpreted *Pereira* narrowly and denied several defendants' motions to dismiss their indictments. Specifically, the court has concluded that a notice to appear omitting the time, date, or place for a defendant's removal hearing does not violate 8 U.S.C. § 1229(a) and thus does not divest the immigration court of subject matter jurisdiction over removal proceedings. This outcome aligns with decisions from the Sixth and Ninth Circuits. Both courts

have held that an initial notice to appear lacking time, date, or place information did not, alone, deprive an immigration court of subject matter jurisdiction.³ *Cardenas-Rodriguez*, 2019 WL 1058197, at *5–6; *Fernandez-Casas*, 2019 WL 1058198, at *5–6; *Garcia-Valadez*, 2019 WL 1058200, at *5–6. Also, this court has analogized service of a notice to appear under 8 C.F.R. § 1003.14 to service of process in civil cases. That is, defects in these notices that may trigger personal jurisdiction issues, but not subject matter jurisdiction issues. *See Chavez*, 2018 WL 6079513, at *5–7.

The court adopts and applies this same reasoning here. Mr. Hernandez-Mendez only advances arguments this court has rejected over the last few months. The court explicitly has declined to adopt his subject matter jurisdiction argument that tries to extend *Pereira* beyond its "narrow" holding. *Pereira*, 138 S. Ct. at 2110, 2113. And, Mr. Hernandez-Mendez's case is distinguishable from the facts of *Pereira*: Here, Mr. Hernandez-Mendez appeared for his hearing. He signed a Certificate of Service attesting that the law enforcement officer who served him had provided him with oral notice of the time and place of his removal hearing. The government also asserts that Mr. Hernandez-Mendez received notice about the continued date for his removal hearing while detained. These notices satisfy the standards provided in 8 C.F.R.

---

³ Judge Melgren has cited *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315 (6th Cir. 2018), which "concluded 'that jurisdiction vests with the immigration court where . . . the mandatory information about the time of the hearing, see 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the [notice to appear].'" *Cardenas-Rodriguez*, 2019 WL 1058197, at *6 (quoting *Hernandez-Perez*, 911 F.3d at 315). He also has cited *Karingithi v. Whitaker*, 913 F.3d 1158, 1159–61 (9th Cir. 2019), which determined that the *Pereira* Court "'was not in any way concerned with the [i]mmigration [c]ourt's jurisdiction.'" *Cardenas-Rodriguez*, 2019 WL 1058197, at *6 (quoting *Karingithi*, 913 F.3d at 1159). Because 8 U.S.C. § 1229(a) doesn't discuss the immigration court's jurisdiction, the Ninth Circuit concluded that "'[t]he regulatory definition, not the one set forth in § 1229(a), governs the [i]mmigration [c]ourt's jurisdiction. A notice to appear need not include the time and date information to satisfy this standard.'" *Id.* (quoting *Karingithi*, 913 F.3d at 1159).

§§ 1003.15 and 1003.18, which our court and the Ninth Circuit have recognized as controlling law on the subject matter jurisdiction issue. The court thus denies Mr. Hernandez-Mendez's motion based on his *Pereira*-based arguments.

### 2. Do other statutory provisions categorize 8 U.S.C. § 1229(a) as a jurisdictional statute?

Mr. Hernandez-Mendez also argues that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") classifies 8 U.S.C. § 1229(a) as a jurisdictional statute. In other words, Mr. Hernandez-Mendez argues, "Congress provided explicit guidance on how to utilize the hearing notice . . . to confer jurisdiction on the immigration court." Doc. 18 at 23. The IIRIRA includes transitional rules to apply to "aliens who were in the administrative process when [the] IIRIRA took effect." *Ram v. I.N.S.*, 243 F.3d 510, 512–13 (9th Cir. 2001). The transitional rules give the United States Attorney General the "option to elect to apply new procedures" in some instances. Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 309(c)(2), 110 Stat. 3009 (1997). Specifically, the transitional rule applicable to notices to appear provides that these notices "confer jurisdiction on the immigration judge." *Id.*

At least one court has considered and explicitly rejected this argument. *See United States v. Avila Flores*, No. 3:18-CR-152-JAG, 2019 WL 1756532, at *3 n.5 (E.D. Va. Apr. 19, 2019). In a footnote, Judge Gibney of the Eastern District of Virginia explained that "the use of the term 'jurisdiction' in the IIRIRA's transitional rules does not change the Court's conclusion [that 8 U.S.C. § 1229(a)] . . . 'says nothing about the Immigration Court's jurisdiction.'" *Id.* (quoting *Karingithi*, 913 F.3d at 1160). Our court also has explained that "an immigration court's subject-matter jurisdiction is determined by statute, not by acts taken by immigration authorities." *Chavez*, 2018 WL 6079513, at *6 (first citing *Larios-Ajualat*, 2018 WL 5013522, at *6 n.4; then citing *Lira-Ramirez*, 2018 WL 5013523, at *6 n.4). Judge Teeter construed § 1229(a)—and the

8

service requirements in that section—as analogous to service of process requirements under rules such as Federal Rule of Civil Procedure 4. Failure to comply with these types of requirements can affect personal jurisdiction—not subject matter jurisdiction, which derives from the statute itself.

The court reaches the same conclusion here. Mr. Hernandez-Mendez hasn't persuaded the court that the transitional statute's reference to the immigration court's "jurisdiction" suffices to confer subject matter jurisdiction on immigration courts through notices to appear. "Congress has specifically authorized immigration judges to conduct removal proceedings and to decide whether an alien is removable under immigration laws." *Id.* (first citing 8 U.S.C. §§ 1229(a) and (c); then citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). The court thus concludes that 8 U.S.C. §§ 1229(a) and (c) confer subject matter jurisdiction on immigration courts. And, as discussed above, because § 1229(a) contains no language about jurisdiction, the relevant regulations—*i.e.*, 8 C.F.R. §§ 1003.14 and 1003.18—control. Thus, Mr. Hernandez-Mendez's arguments based on IIRIRA's transitional provisions do not persuade the court that 8 U.S.C. § 1229(a) is a jurisdictional statute.

**B. Collateral Attack on Deportation Order**

Mr. Hernandez-Mendez's motion also argues that because the first removal order—issued on January 9, 2017—was void because it failed to trigger the immigration court's subject matter jurisdiction, the second removal order that reinstated the January 9 order also was void.

Our court generally has concluded that, since the Tenth Circuit hasn't yet addressed *Pereira*'s effect—if any—on 8 U.S.C. § 1326(d)'s collateral attack requirements, a defendant challenging a removal order must satisfy its three requirements. *See Cardenas-Rodriguez*, 2019 WL 1058197, at *8; *Fernandez-Casas*, 2019 WL 1058198, at *8; *Garcia-Valadez*, 2019 WL

1058200, at *8; *Chavez*, 2018 WL 6079513, at *4–7; *Larios-Ajualat*, 2018 WL 5013522, at *4–7; *Lira-Ramirez*, 2018 WL 5013523, at *4–7.

But, Mr. Hernandez-Mendez's motion doesn't specify how he satisfies the three requirements under 8 U.S.C. §§ 1326(d)(1)–(3) permitting him to attack his removal order collaterally. Instead, he asserts merely that his first removal order, based on a deficient Notice to Appear that divested the immigration court of subject matter jurisdiction, nullified his second removal order. And, he contends, his second removal order cannot "independently support an illegal reentry charge" because it extends only as far as the purportedly void first removal order. Doc. 18 at 28. This court consistently has held that the requirements in §§ 1326(d)(1)–(3) control (and the Tenth Circuit hasn't reached a different conclusion). Mr. Hernandez-Mendez hasn't satisfied his burden to demonstrate that he may collaterally attack his removal order. The court thus denies his motion based on his collateral attack arguments.

## IV. Conclusion

For the reasons explained, above, the court is unpersuaded that *Pereira* requires notices to appear to contain time and place information for removal hearings to trigger the subject matter jurisdiction of immigration courts. And, the court doesn't find that this purported lack of subject matter jurisdiction allows defendants to collaterally attack removal orders without complying with 8 U.S.C. §§ 1326(d)(1)–(3). The court thus denies Mr. Hernandez-Mendez's motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Ignacio Hernandez-Mendez's Motion to Dismiss his Indictment (Doc. 18) is denied.

**IT IS SO ORDERED.**

**Dated this 15th day of May, 2019, at Kansas City, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**